Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
09/14/2018 08:10 AM CDT

State of Nebraska, appellee, v.
Jesse M. Dill, appellant.
___ N.W.2d ___

Filed June 22, 2018.    No. S-17-991.

1. **Sentences: Appeal and Error.** An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court.
2. **Judgments: Words and Phrases.** An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.
3. **Sentences: Probation and Parole.** When a court sentences a defendant to postrelease supervision, it may impose any conditions of postrelease supervision authorized by statute.
4. **Rules of the Supreme Court: Records: Appeal and Error.** Neb. Ct. R. App. P. § 2-109(D)(1)(f) and (g) (rev. 2014) requires that factual recitations be annotated to the record, whether they appear in the statement of facts or argument section of a brief. The failure to do so may result in an appellate court's overlooking a fact or otherwise treating the matter under review as if the represented fact does not exist.
5. **Appeal and Error.** An alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court.
6. ____. An appellate court does not consider errors which are argued but not assigned.

Appeal from the District Court for Lancaster County: Lori A. Maret, Judge. Affirmed.

Joseph D. Nigro, Lancaster County Public Defender, and John C. Jorgensen for appellant.

Douglas J. Peterson, Attorney General, and Kimberly A. Klein for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, and Papik, JJ.

Cassel, J.

## INTRODUCTION

Jesse M. Dill appeals from a sentence imposing both imprisonment and postrelease supervision in a criminal case. But she assigns error only to the fees and payments required under the postrelease supervision order. We have not previously considered the issue in this context. Because we find no abuse of discretion, we affirm.

## BACKGROUND

The district court accepted Dill's no contest plea to a Class IIIA felony. The court imposed a determinate sentence of 1 year's imprisonment followed by 18 months of postrelease supervision. The court ordered Dill to pay a number of fees in connection with the postrelease supervision: a $30 administrative enrollment fee, a $25 monthly programming fee, and a $5 monthly fee for chemical testing. The court also ordered Dill to pay costs associated with any evaluations, counseling, or treatment undertaken at the direction of her postrelease supervision officer.

At the sentencing hearing, neither party offered any evidence. Both parties disclaimed any additions or corrections to the presentence report.

Dill's counsel objected to a number of the postrelease supervision conditions. With regard to the various fees Dill was ordered to pay, counsel stated that Dill previously had been determined to be indigent and without the financial means to pay fees. Counsel also stated that there had "been no further assessment in regards to her ability to pay." The court overruled the objections and entered a postrelease

supervision order containing the same conditions as had been orally announced.

Dill filed a timely appeal, and we granted her petition to bypass review by the Nebraska Court of Appeals.

## ASSIGNMENT OF ERROR

Dill assigns that the court abused its discretion by imposing costs and fees of postrelease supervision upon her.

## STANDARD OF REVIEW

[1,2] An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court.[1] An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.[2]

## ANALYSIS

Postrelease supervision is a relatively new concept in Nebraska sentencing law.[3] As such, our case law on the subject is scant. Last year, a defendant sought to challenge the validity of postrelease supervision conditions imposed upon him, but we determined that because he did not challenge those conditions at the sentencing hearing, he waived his challenge.[4] Here, Dill raised her objections at the time of sentencing. This appeal presents our first opportunity to address a preserved challenge to the conditions imposed in connection with a sentence of postrelease supervision. But before we reach Dill's specific arguments, we examine the statutory structure concerning postrelease supervision.

---

[1] *State v. Hunt*, 299 Neb. 573, 909 N.W.2d 363 (2018).

[2] *Id.*

[3] *State v. Kennedy*, 299 Neb. 362, 908 N.W.2d 69 (2018). See, also, Neb. Rev. Stat. §§ 28-105 (Supp. 2017) and 29-2204.02 (Reissue 2016).

[4] See *State v. Phillips*, 297 Neb. 469, 900 N.W.2d 522 (2017).

### Statutory Framework

The Nebraska Probation Administration Act defines terms pertinent to postrelease supervision.[5] The definition of postrelease supervision is "the portion of a split sentence following a period of incarceration under which a person found guilty of a crime . . . is released by a court subject to conditions imposed by the court and subject to supervision by the [Office of Probation Administration]."[6] "Probation," which "includes post-release supervision," is "a sentence under which a person found guilty of a crime upon verdict or plea or adjudicated delinquent or in need of special supervision is released by a court subject to conditions imposed by the court and subject to supervision."[7] And a person sentenced to postrelease supervision is called a "[p]robationer."[8] The legislative intent is clear. Postrelease supervision is to be treated as a form of probation, and the usual rules of law governing probation will ordinarily apply to postrelease supervision.

A sentence of postrelease supervision is statutorily mandated for certain lower-level felonies. Except when a term of probation is required by law, statutes compel the imposition of a determinate sentence along with a sentence of postrelease supervision for an offender convicted of a Class III, IIIA, or IV felony.[9] But an offender convicted of one of those enumerated felonies is not subject to postrelease supervision if he or she is also sentenced to imprisonment for a felony with a higher penalty classification.[10] When a court sentences an offender to postrelease supervision, the court shall specify the term of such postrelease supervision.[11]

---

[5] See Neb. Rev. Stat. §§ 29-2246 to 29-2269 (Reissue 2016 & Supp. 2017).

[6] See § 29-2246(3) and (13).

[7] § 29-2246(4).

[8] § 29-2246(5).

[9] See §§ 28-105(1) and 29-2204.02.

[10] See 28-105(6).

[11] § 29-2263(2).

Other statutes apply procedures of probation to postrelease supervision. All sentences of postrelease supervision are served under the jurisdiction of the Office of Probation Administration and are subject to conditions imposed under § 29-2262 and subject to sanctions authorized under § 29-2266.02.[12] A court may revoke a probationer's postrelease supervision upon finding that the probationer violated one of its conditions.[13]

### STATUTE AND RULE IMPLEMENTING POSTRELEASE SUPERVISION

The legislation that introduced postrelease supervision into Nebraska's statutes[14] authorized the adoption of rules and regulations governing probation, which, as we have observed, includes postrelease supervision. The Nebraska Probation Administration Act now defines "[r]ules and regulations" to mean "policies and procedures written by the [Office of Probation Administration] and approved by the Supreme Court."[15]

The act speaks broadly. It authorizes rules and regulations
- "as may be necessary or proper for the operation of the [Office of Probation Administration] or [Nebraska Probation System],"[16]
- "for transitioning individuals on probation across levels of supervision and discharging them from supervision consistent with evidence-based practices,"[17]
- to "ensure supervision resources are prioritized for individuals who are high risk to reoffend,"[18]

---

[12] § 28-105(5).

[13] § 29-2268(2).

[14] See 2015 Neb. Laws, L.B. 605.

[15] § 29-2246(14).

[16] § 29-2252(11).

[17] *Id.*

[18] *Id.*

- for "transitioning individuals down levels of supervision intensity,"[19]
- for "establish[ing] incentives for earning discharge from supervision,"[20]
- "for the creation of individualized post-release supervision plans,"[21]
- for governing supervision of probationers, advising courts of situations requiring modification of conditions or warranting termination, and providing additional duties for district probation officers,[22] and
- for dealing with violations of probation imposed for misdemeanors[23] and felonies.[24]

In accordance with this broad authority, the probation administrator proposed—and this court adopted—a rule to address orders of postrelease supervision.[25] There is no challenge to the constitutionality or validity of the rule in this appeal. Indeed, Dill does not cite to or otherwise recognize the existence of the rule. Nonetheless, we apply the rule to this appeal.

The rule dictates that the postrelease supervision be pronounced at sentencing.[26] The timing is logical, because postrelease supervision is part of the sentence.[27] Under the rule, the court shall impose the term of postrelease supervision and shall also enter a separate postrelease supervision order that sets forth conditions under § 29-2262.[28] Thus, the imposition of conditions is not deferred to a later time.

---

[19] *Id.*

[20] *Id.*

[21] § 29-2252(19).

[22] See § 29-2258.

[23] See § 29-2266.01.

[24] See § 29-2266.02.

[25] Neb. Ct. R. § 6-1904 (rev. 2016).

[26] See § 6-1904(A).

[27] See, generally, *State v. Phillips, supra* note 4.

[28] See § 6-1904(A).

Statutes Regarding
Fees and Costs

[3] We have said that when a court sentences a defendant to probation, it may impose any conditions of probation that are authorized by statute.[29] Because postrelease supervision is a form of probation, the same rule necessarily follows for postrelease supervision. We now hold that when a court sentences a defendant to postrelease supervision, it may impose any conditions of postrelease supervision authorized by statute. Thus, the question turns to what the statutes authorize as to such fees and payments.

As part of the governing structure, the Legislature delineated certain fees that an adult probationer must pay. These include (1) a one-time administrative enrollment fee of $30,[30] (2) a monthly probation programming fee of $25 for the duration of the postrelease supervision,[31] and (3) a larger monthly programming fee where intensive supervision probation or participation in non-probation-based programs or services is involved.[32] The fees imposed pursuant to § 29-2262.06 are specifically authorized as a condition of probation under § 29-2262(2)(t).

As to these monthly programming fees, the statute requires a court to waive payment in whole or in part "if after a hearing a determination is made that such payment would constitute an undue hardship on the offender due to limited income, employment or school status, or physical or mental handicap."[33] But the waiver must be limited to "the period of time that the probationer . . . is unable to pay his or her monthly probation programming fee."[34] Thus, the statute contemplates that the assessment of undue hardship may change during postrelease

---

[29] *State v. Rieger*, 286 Neb. 788, 839 N.W.2d 282 (2013).

[30] § 29-2262.06(3)(a).

[31] § 29-2262.06(3)(b).

[32] § 29-2262.06(3)(c).

[33] § 29-2262.06(4).

[34] *Id.*

supervision. In other words, the monthly fee may go up or down.

The monthly probation programming fee is separate and apart from fees that may be imposed for tests to determine the presence of drugs or alcohol, psychological evaluations, offender assessment screens, and rehabilitative services required in the identification, evaluation, and treatment of offenders.[35] But as to such tests, evaluations, screens, and services, the probationer shall be required to pay them only if the "offender has the financial ability to pay."[36] There is no suggestion in the statute that such "ability to pay" is a static concept that cannot be reassessed during the period of postrelease supervision.

At the time of sentencing, the court makes an initial determination regarding the existence of an undue hardship regarding monthly programming fees and, if § 29-2262(2)(m) services are ordered, the ability to pay for them. Its decision is informed by factual information gathered in connection with the preparation of a presentence report or by evidence adduced at the time of sentencing.

This inquiry differs from that regarding indigency for the purpose of the right to court-appointed counsel. At the time of a felony defendant's first appearance before a court, the court advises him or her of the right to court-appointed counsel if he or she is indigent.[37] Indigent means the "inability to retain legal counsel without prejudicing one's financial ability to provide economic necessities for one's self or one's family."[38] If the defendant asserts indigency, "the court shall make a reasonable inquiry to determine his or her financial condition and may require him or her to execute an affidavit of indigency."[39]

---

[35] See §§ 29-2262(2)(m) and 29-2262.06(8).

[36] § 29-2262(2)(m).

[37] Neb. Rev. Stat. § 29-3902 (Reissue 2016).

[38] Neb. Rev. Stat. § 29-3901(3) (Reissue 2016).

[39] § 29-3902.

MODIFICATION

There are multiple points at which the conditions of postrelease supervision may be modified. Prior to an individual's anticipated date of release from the Department of Correctional Services or local county jail, the court shall receive a postrelease supervision plan from the probation office.[40] Based upon the plan, "[t]he court shall consider modification to the post-release supervision order, upon application and recommendation . . . ."[41] If the court modifies the postrelease supervision order, it must do so prior to the individual's anticipated date of release.[42] Later, during the term of postrelease supervision, the conditions of the court's order may be modified or eliminated under § 29-2263(3).[43]

Although the sentencing court can later modify the conditions of postrelease supervision, it is important to raise any objections to the conditions when they are first announced. If a condition would be unlikely to promote rehabilitation or reintegration or would be disproportionate, the alleged deficiency should be brought to the sentencing court's attention for possible elimination or modification at the outset. With all of this in mind, we now turn to Dill's assigned error.

DILL'S ARGUMENTS

Dill challenges the imposition of fee-based conditions, which she contends were excessive. She asserts that her challenge "essentially present[s] . . . a modified excessive sentence case."[44] And she implicitly recognizes that our review is for "an abuse of discretion."[45] She specifically challenges four fees: the administrative enrollment fee of $30, programming fees of $25 per month, chemical testing fees of $5 per

---

[40] See § 6-1904(B) and (C).

[41] Id.

[42] § 6-1904(D).

[43] See § 6-1904(A).

[44] Brief for appellant at 7.

[45] Id.

month, and unspecified fees associated with § 29-2262(2)(m) services. The first two are governed by § 29-2262.06. The last two fall under § 29-2262(2)(m). For the reasons that follow, we find no abuse of discretion in the order establishing the conditions of postrelease supervision.

Dill first complains that these fees amount to a de facto fine for anyone on postrelease supervision. We disagree. As discussed above, the fees are mandated by the Legislature.[46] And Dill does not challenge the constitutionality of the statutes or the validity of the rule adopted to implement postrelease supervision. Instead, she submits a lengthy discussion of sentencing philosophy.

[4] Dill fails to advance any specific argument, regarding either undue hardship or inability to pay, tied to the record. She refers to what might "typically" or "frequently" occur.[47] But we are confined to the record before us. And her brief does not cite to either the bill of exceptions or the presentence report regarding facts that might support her argument. We have said that Neb. Ct. R. App. P. § 2-109(D)(1)(f) and (g) (rev. 2014) requires that factual recitations be annotated to the record, whether they appear in the statement of facts or argument section of a brief. The failure to do so may result in an appellate court's overlooking a fact or otherwise treating the matter under review as if the represented fact does not exist.[48] We decline to scour the record in search of facts that might support a claim of undue hardship or inability to pay.

Dill also seems to argue that appointment of counsel and waiver of appeal costs, ipso facto, dictate that postrelease enrollment and programming fees would constitute an undue hardship and that she lacks the ability to pay § 29-2262(2)(m) rehabilitation expenses. But she cites no authority for this proposition, and we are aware of none. Indeed, as we have already outlined, separate statutes with differing standards

---

[46] See §§ 29-2262 and § 29-2262.06.

[47] Brief for appellant at 10.

[48] *State v. Edwards*, 278 Neb. 55, 767 N.W.2d 784 (2009).

apply to each question. We reject the notion that application of one statutory standard mandates the same result under a different standard prescribed by a separate statute.

As we have already observed, the statute establishing the monthly programming fee contemplates reevaluation during the period of postrelease supervision. Should Dill later show that the monthly programming fee constitutes an undue hardship, she has a potential remedy. And, of course, based on the postrelease supervision plan prepared by the probation office prior to Dill's release from prison, the court may modify its postrelease supervision order.[49]

[5,6] Dill also argues that the district court improperly delegated authority with respect to one of the conditions. But this argument addresses the propriety of the court's allowing the postrelease supervision officer to direct Dill to "satisfactorily attend and successfully complete any alcohol, drug, and/or mental health evaluation, counseling, or treatment." And Dill did not assign this as error; rather, she assigned only that the court "abused its discretion by imposing costs and fees of postrelease supervision." An alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court.[50] An appellate court does not consider errors which are argued but not assigned.[51] We do not consider Dill's improper-delegation argument as fairly within the scope of her sole assignment of error. Accordingly, we do not address this argument.

## CONCLUSION

Because the district court did not abuse its discretion in its imposition of conditions of postrelease supervision regarding fees and payments, we affirm its sentence.

AFFIRMED.

---

[49] See § 6-1904(B).

[50] *State v. Chacon*, 296 Neb. 203, 894 N.W.2d 238 (2017).

[51] *State v. Jedlicka*, 297 Neb. 276, 900 N.W.2d 454 (2017).