IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. MARTINEZ

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

MARCOS A. MARTINEZ, APPELLANT.

Filed November 13, 2018.    No. A-17-1072.

Appeal from the District Court for Douglas County: KIMBERLY MILLER PANKONIN, Judge. Affirmed.

Jerry M. Hug, of Alan G. Stoler, P.C., L.L.O., for appellant.

Douglas J. Peterson, Attorney General, and Joe Meyer for appellee.

RIEDMANN, BISHOP, and WELCH, Judges.

BISHOP, Judge.

## I. INTRODUCTION

Marcos A. Martinez was charged in Douglas County District Court with three counts of robbery and one count of use of a deadly weapon (firearm) to commit a felony. Martinez was 17 years old at the time and filed a motion to transfer his case to juvenile court. The motion was denied, and Martinez subsequently pled guilty to, and was convicted of, two counts of robbery and one count of attempted use of a deadly weapon to commit a felony. He was sentenced to a total of 16 to 22 years' imprisonment. Martinez claims the district court erred by denying his motion to transfer his case to juvenile court. He also appeals from his sentences, claiming they are excessive. Finding no abuse of discretion, we affirm.

- 1 -

## II. BACKGROUND

On February 22, 2017, the State filed an information charging Martinez with three counts of robbery, each a Class II felony, and one count of use of a deadly weapon (firearm) to commit a felony, a Class IC felony. One of the robberies occurred on January 24 (at Omaha Tobacco), and the other two robberies occurred on January 27, one at All Nations Grocery Store (All Nations) and the other at Eddy's FasMart; the use of a deadly weapon to commit a felony charge was alleged to have occurred on January 27.

Martinez filed a motion to transfer his case to juvenile court; a transfer hearing was held on May 10, 2017. At the hearing, the State offered exhibit 1, which was received without objection for purposes of the transfer hearing. Exhibit 1 contains police reports related to this case, an investigator synopsis summarizing the contents of the reports, and the booking sheet for Martinez; the booking sheet contains Martinez' date of birth as well as his criminal history in Douglas County. More details from exhibit 1 will be set forth later in our analysis. The State did not call any witnesses to testify, nor did Martinez.

On May 16, 2017, the district court entered an order finding there was a sound basis to retain jurisdiction and therefore the motion to transfer was denied. Further details from the court's order will be set forth later in our analysis. (We note that Martinez did not, and could not, appeal the denial of transfer at that time. 2017 Neb. Laws, L.B. 11, the statutory amendment providing for interlocutory appeals of orders granting or denying transfer to juvenile court did not become effective until August 24, 2017.)

The State filed an amended information charging Martinez with three counts of robbery, each a Class II felony, and one count of attempted use of a deadly weapon (gun) to commit a felony, also a Class II felony. Martinez ultimately pled guilty to and was convicted of two counts of robbery (the January 27 robberies of All Nations and Eddy's FasMart) and one count of attempted use of a deadly weapon to commit a felony. (The plea hearing does not appear in our record.) He was later sentenced to 6 to 8 years' imprisonment for each robbery conviction, and 4 to 6 years' imprisonment for the attempted use of a deadly weapon conviction; all sentences were to be served consecutively and he was given credit for 224 days' time served. Martinez appeals.

## III. ASSIGNMENTS OF ERROR

Martinez assigns the district court erred by (1) failing to transfer the case to juvenile court and (2) imposing excessive sentences.

## IV. STANDARD OF REVIEW

A motion to transfer a pending criminal proceeding to the juvenile court is reviewed for an abuse of discretion. *State v. Tyler P.*, 299 Neb. 959, 911 N.W.2d 260 (2018). A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Id.*

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Dill*, 300 Neb. 344, 913 N.W.2d 470 (2018).

## V. ANALYSIS

### 1. MOTION TO TRANSFER TO JUVENILE COURT

Neb. Rev. Stat. § 43-246.01(3) (Reissue 2016) grants concurrent original jurisdiction to the juvenile court and the county or district courts over juvenile offenders who (1) are 11 years of age or older and commit a traffic offense that is not a felony or (2) are 14 to 17 years of age and commit a Class I, IA, IB, IC, ID, II, or IIA felony. Actions against these juveniles may be initiated either in juvenile court or in the county or district court. In the present case, all of the allegations against Martinez put him within this second category of juvenile offenders. The State chose to initiate proceedings in district court, and Martinez subsequently moved to have his case transferred to juvenile court. See Neb. Rev. Stat. § 29-1816 (Reissue 2016) (in part provides mechanism for accused person, who was younger than 18 years of age at time alleged offense was committed, to motion to have his or her case transferred from county or district court to juvenile court, and procedures to be followed following filing of such motion).

When Martinez moved to transfer his case to juvenile court, the district court conducted a hearing pursuant to § 29-1816(3)(a), which subsection requires consideration of the following factors set forth in Neb. Rev. Stat. § 43-276(1) (Reissue 2016):

> (a) The type of treatment such juvenile would most likely be amenable to; (b) whether there is evidence that the alleged offense included violence; (c) the motivation for the commission of the offense; (d) the age of the juvenile and the ages and circumstances of any others involved in the offense; (e) the previous history of the juvenile, including whether he or she had been convicted of any previous offenses or adjudicated in juvenile court; (f) the best interests of the juvenile; (g) consideration of public safety; (h) consideration of the juvenile's ability to appreciate the nature and seriousness of his or her conduct; (i) whether the best interests of the juvenile and the security of the public may require that the juvenile continue in secure detention or under supervision for a period extending beyond his or her minority and, if so, the available alternatives best suited to this purpose; (j) whether the victim agrees to participate in mediation; (k) whether there is a juvenile pretrial diversion program established pursuant to sections 43-260.02 to 43-260.07; (l) whether the juvenile has been convicted of or has acknowledged unauthorized use or possession of a firearm; (m) whether a juvenile court order has been issued for the juvenile pursuant to section 43-2,106.03; (n) whether the juvenile is a criminal street gang member; and (o) such other matters as the parties deem relevant to aid in the decision.

The customary rules of evidence shall not be followed at such hearings and, "[a]fter considering all the evidence and reasons presented by both parties, the case shall be transferred to juvenile court unless a sound basis exists for retaining the case in county court or district court." See § 29-1816(3)(a) and (b).

As the Nebraska Supreme Court has explained, in conducting a hearing on a motion to transfer a pending criminal case to juvenile court, the court should employ "a balancing test by which public protection and societal security are weighed against the practical and nonproblematical rehabilitation of the juvenile." *State v. Stevens*, 290 Neb. 460, 465, 860 N.W.2d

717, 725 (2015). "In order to retain the proceedings, the court need not resolve every factor against the juvenile, and there are no weighted factors and no prescribed method by which more or less weight is assigned to a specific factor." *Id*. "The burden of proving a sound basis for retention lies with the State." *Id*.

### (a) State's Evidence

As stated previously, exhibit 1 was received into evidence without objection for purposes of the juvenile transfer hearing. Exhibit 1 contains police reports related to this case, an investigator synopsis summarizing the contents of the reports, and the booking sheet for Martinez; the booking sheet contains Martinez' date of birth as well as his criminal history in Douglas County. We now set forth the pertinent information from exhibit 1.

### (i) Police Description of Three Robberies

#### a. Omaha Tobacco

Omaha Tobacco was robbed on January 24, 2017. Upon arriving on scene, an officer learned from a store employee that a black male entered the store, pulled out a black semi-automatic pistol and demanded money. The man was dressed in a black hooded sweatshirt and bright green gloves. The money (between $350 and $600) was placed in a red/white Santa Clause hat that was brought in by the man. The store employee chased the man out of the store and saw him get into the passenger side of a red 4-door sedan with no license plates. The store employee reported to police that 1 hour prior to the incident, that man and another man entered the store and looked around but did not purchase anything; the two men were seen arriving in and leaving in a maroon Chevrolet Impala with no license plates.

#### b. All Nations

All Nations was robbed on January 27, 2017. Upon arriving on scene, officers learned from the store clerk that two men, both believed to be Hispanic, entered the store and approached the front counter; both men were wearing hooded sweatshirts with the hoods pulled up. One of the men displayed a firearm and demanded money. The second man collected money (approximately $90). Both men fled the store and got into an awaiting red Chevrolet Impala (the vehicle did have a license plate and a possible partial plate was noted).

#### c. Eddy's FasMart

Eddy's FasMart was also robbed on January 27, 2017. When law enforcement arrived, they learned from the store clerk that two young black males entered the store, shopped around for a while, and then approached the counter. The clerk rang the men up and when the clerk opened the register to get the change, one of the men produced a semi-automatic handgun and told the clerk to "'gimme the money.'" The men handed the clerk a white plastic bag and told him to put the money in the bag. The men fled the store, got into a maroon Chevrolet Impala, and fled the scene.

Gang Unit detectives who happened to be at a business next door to Eddy's FasMart were made aware of the situation, exited the business and saw two suspects running from the gas station and getting into a maroon Chevrolet Impala with no plates. The information was put out on Police Radio as the detectives began to follow the suspects; the detectives noticed that a second maroon

Chevrolet Impala with a license plate (we note the license plate was similar to the partial plate description from the earlier robbery at All Nations) began following the suspect vehicle. Law enforcement descended on the two vehicles and were able to detain three individuals: Thomas Yata, Vincent Haynes, and Martinez.

Law enforcement later searched the two vehicles. In the vehicle that Martinez and Yata were located, officers recovered numerous items including, a pair of green gloves, a white plastic bag containing money, a black Beretta handgun, and the items which the suspects brought to the counter to purchase prior to committing the robbery. Other items located in the vehicle included loose cash, a Santa Clause hat, and a gray and brown hooded sweatshirt.

"Showups" were done, and the Eddy's FasMart clerk was able to identify Yata and Martinez as the two men who entered the store and committed the robbery.

### (ii) Police Interview of Yata

Yata (19 years old) was advised of and waived his *Miranda* rights. Yata admitted going into Omaha Tobacco an hour before the robbery with his friend "Chino" (not Martinez), and admitted to committing the robbery. He said he split the money evenly with Martinez, who was the getaway driver. Yata admitted that the gun used during the robbery was a real gun (unloaded) and that it was provided by Martinez. Yata stated that his vehicle (the maroon Chevrolet Impala, no plates) was used during the initial casing incident as well as during the robbery.

Yata admitted committing the robbery at Eddy's FasMart. He stated that it was Martinez' idea to commit the robbery and that Martinez provided the firearm. Yata drove his vehicle and Martinez was in the passenger seat. Yata took the gun, approached the clerk, and demanded money while Martinez provided the bag for the money and collected the money. Yata knew the gun used was a real loaded firearm. He gave the gun to Martinez while driving away from the scene; Yata claimed he did not know what Martinez did with the gun. Yata stated that Haynes (Martinez' friend) was following them from the robbery scene and that he was going to take one-third of the money from the robbery.

### (iii) Police Interview of Haynes

Haynes (18 years old) was advised of and waived his *Miranda* rights. "After some initial deception," Haynes admitted to being the getaway driver for the All Nations robbery. Martinez told Haynes that he wanted to do an "'L,'" which is a "lick, meaning robbery." Haynes pulled over and waited while Martinez and Isaiah Perez got out of the vehicle and went inside the store; Haynes waited for the two men to return to the vehicle after the robbery was committed before fleeing the area. Haynes claimed that he did not receive any money in return for being the getaway driver.

Haynes agreed to help Martinez and Yata rob Eddy's FasMart. Haynes parked across the street and waited for the robbery "to go down." Once Martinez and Yata left the scene, Haynes was supposed to follow directly behind Yata and act as a decoy for any police that may be in the area looking for a maroon Chevrolet Impala that was involved in the robbery. Since Haynes would not be the robbery suspect and there would be no evidence of the robbery in the vehicle, Haynes would be a decoy while the real suspects got away. Haynes was supposed to get one-third of the profit from the robbery for his participation.

*(iv) Police Interview of Perez*

Perez (18 years old) was advised of and waived his *Miranda* rights. Perez admitted that he and Martinez entered All Nations with the intent to rob the store. Perez picked up some candy, placed it on the counter, and paid for the candy, causing the cash register drawer to open. Martinez displayed a black semiautomatic handgun, and Perez provided a plastic bag for the cash to be placed into; both Perez and Martinez left the store and ran to Haynes' red Chevrolet Impala, which was parked beside the store as a getaway car.

*(v) Police Interview of Martinez*

Martinez (17 years old) was advised of and waived his *Miranda* rights. Martinez admitted to being the suspect armed with the firearm during the commission of the All Nations robbery. He stated that Haynes was the getaway driver during that robbery and that the vehicle was Haynes' maroon Chevrolet Impala (with a license plate). Martinez also named Perez as being inside the store and assisting with the robbery. Martinez admitted that the firearm used during the All Nations robbery was a real firearm.

Martinez admitted to being inside and assisting Yata with the Eddy's FasMart robbery. He claimed the incident was a "spur of the moment thing" and not planned in advance.

"After some initial deception," Martinez admitted that he was in Omaha Tobacco with Yata about an hour before the robbery. Martinez admitted that he was waiting in the driver's seat of Yata's vehicle while Yata was robbing the store. Martinez claimed he drove the vehicle a short distance from the scene before pulling over and allowing Yata to drive the vehicle. Martinez claimed he did not get any money for being the getaway driver.

Martinez did not want to give details about the firearms used during the various incidents but admitted that they were real guns.

(b) Juvenile Transfer Factors

The district court stated that it considered the "relevant statutory criteria." The district court made findings as to the factors contained in § 43-276(1), which "shall be considered" at a hearing under § 29-1816(3)(a). We summarize the factors the district court concluded favored retaining jurisdiction.

*(i) Factors Favoring Retention in District Court*

In its order, the district court set forth its findings that favored retaining jurisdiction. In our review of the court's order, it appears that the court found the majority of the factors set forth in § 43-276(1) favored retaining jurisdiction in the district court, namely: (b) whether there was evidence that the alleged offenses included violence; (c) the motivation for the commission of the offense; (d) Martinez' age; (e) Martinez' previous history; (f) the best interests of Martinez; (g) consideration of public safety; (h) consideration of Martinez' ability to appreciate the nature and seriousness of his conduct; (i) whether Martinez' best interests and the security of the public may require that Martinez continue in secure detention or under supervision for a period extending beyond his minority and, if so, the available alternatives best suited to this purpose; and (l) whether Martinez has been convicted of or has acknowledged unauthorized use or possession of a firearm.

The district court stated that alleged charges consisted of three separate crimes involving the threat of violence to employees at Omaha Tobacco, All Nations, and Eddy's FasMart between January 24 and 27, 2017. (This falls under factor (b) in § 43-276(1).) Martinez admitted to being the suspect armed with a firearm during the commission of the All Nations robbery, and he arguably provided the handgun for all three robberies. (This falls under factor (l).)

Based on its review of police reports, the district court said it appeared the motivation for the crimes were "clearly adult in nature." (This falls under factor (c) in § 43-276(1).) The court said, "The crimes were planned out and repeated after being successful. The robberies were carefully executed by way of casing out the scene, bringing a firearm, [having] a get-away driver, getting a bag to place the money in and using a second car as a decoy car." The court found that Martinez "has shown notable maturity and criminal propensity." (This falls under factor (h).)

The district court's order stated that in reviewing Martinez' criminal record, it appeared he had just finished a term of probation for destruction of property and that "[d]espite recently being on probation, Martinez engaged in multiple criminal activities." (This falls under factor (e) in § 43-276(1).)

Martinez was 17 years old at the time of the pending offenses. (This falls under (d) in § 43-276(1).) The district court expressed concern about the juvenile court losing jurisdiction when Martinez turns 19, noting that he would be 18 years old in July 2017 "and that would leave barely a year to work with issues that may present from such serious crimes." The court concluded that the "best interests of [Martinez] and society require detention or supervision of [Martinez] beyond his age of majority." (This falls under factors (f), (g), and (i).)

The district court said it had "carefully considered the matter in light of the relevant statutory criteria." "Given the serious nature of the offense, Martinez's previous contacts with the juvenile court system, his sophistication, age, maturity and the security of the public," the court found that the juvenile system "would be inadequate." "Having balanced the public protections and societal security against the practical and non-problematic rehabilitation of Martinez," the court found that a transfer of jurisdiction was not appropriate and that there was a sound basis to retain jurisdiction.

### (ii) Remaining Statutory Considerations

No specific findings were made regarding the remaining factors set forth in § 43-276(1), namely: (a) the type of treatment Martinez would most likely be amenable to, (j) whether Martinez agreed to participate in mediation, (k) whether there was a juvenile pretrial diversion program pursuant to §§ 43-260.02 to 43-260.07, (m) whether a juvenile court order had been issued for Martinez pursuant to § 43-2,106.03, and (n) whether Martinez is a criminal street gang member. "[T]hough it would have been preferable for the district court to refer to all the statutory considerations, the statute does not require it to do so." *State v. Tyler P.*, 299 Neb. 959, 971, 911 N.W.2d 260, 269 (2018).

### (c) Was Denial of Transfer Abuse of Discretion?

As noted earlier, in order to retain the proceedings, a trial court need not resolve every factor against the juvenile, and there are no weighted factors and no prescribed method by which more or less weight is assigned to a specific factor. See *State v. Stevens*, 290 Neb. 460, 860 N.W.2d

717 (2015). Further, a trial court's denial of a motion to transfer a pending criminal proceeding to the juvenile court is reviewed for an abuse of discretion. *State v. Hunt*, 299 Neb. 573, 909 N.W.2d 363 (2018).

In this case, the district court found that a majority of the factors set forth in § 43-276(1) favored retaining the case. However, Martinez argues that when considering the factors set forth in § 43-276, his case should have been transferred to the juvenile court. In support of his argument he points out that the district court noted he (Martinez) had previously completed a term of probation in juvenile court for destruction of property; he then claims this shows he is amenable to treatment such as counseling and alternatives to incarceration available in juvenile court. While it is true that the court noted Martinez had previously completed a term of probation, the court also said that "[d]espite recently being on probation, Martinez engaged in multiple criminal activities." This would suggest that the court did not think that Martinez would be amenable to treatment.

Martinez also contends that while the offense did include violence, the motivation for the offenses were "driven by other older individuals involved in the offenses with Martinez" and that "the others he was with at the time tried to pin all of the robberies on [him] after being caught by police." Brief for appellant at 6. Martinez claims that "there was no evidence of any propensity on the part of Martinez to be involved in robberies on his own as each robbery was committed with other individuals being involved." *Id.* at 6-7. It is true that Martinez, at 17 years old, was the youngest participant in the robberies. However, all of the participants were within 2 years of age of each other. And Martinez himself admitted to his participation in all three robberies, including being the suspect armed with the firearm during the commission of the All Nations robbery, being inside and assisting Yata with the Eddy's FasMart robbery, and being the getaway driver for the Omaha Tobacco robbery. The district court found that Martinez "has shown notable maturity and a criminal propensity."

Additionally, Martinez argues that "there was no evidence that he was a 'criminal street gang member,'" nor did he have a history of "any serious unlawful conduct." *Id.* at 7. However, these are but two of the factors to be considered.

We cannot say the district court abused its discretion by finding that the statutory factors favored retaining the case, as the record supports that Martinez' need for supervision and treatment will extend beyond the time the juvenile court would have jurisdiction over him. And when a district court's basis for retaining jurisdiction over a juvenile is supported by appropriate evidence, it cannot be said that the court abused its discretion in refusing to transfer the case to juvenile court. *State v. Hunt, supra*.

## 2. SENTENCES

Martinez argues the district court imposed excessive sentences under the circumstances of this case. Martinez was sentenced to 6 to 8 years' imprisonment for each of his two robbery convictions, and 4 to 6 years' imprisonment for his attempted use of a deadly weapon conviction; all three of his convictions were for Class II felonies. Under Neb. Rev. Stat. § 28-105 (Reissue 2016), a Class II felony is punishable by 1 to 50 years' imprisonment. Martinez' sentences were therefore within the statutory limits.

Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether the sentencing court abused its discretion in

considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed. *State v. Stone*, 298 Neb. 53, 902 N.W.2d 197 (2017). When imposing a sentence, the sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the violence involved in the commission of the offense. *Id.* The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *State v. Chacon*, 296 Neb. 203, 894 N.W.2d 238 (2017).

Martinez was 17 years old at the time of the crimes and 18 years old at the time of sentencing. He was single and had no dependents. He was raised by his parents and has four siblings, three of whom are older than Martinez. Martinez and his family came to the United States from the Dominican Republic when he was approximately 11 years old.

Martinez had numerous behaviors in school through the years resulting in disciplinary action. Those behaviors included, but were not limited to, bullying, assault on staff, repeated violations to code of conduct, verbal or written abuse to staff, threats, vulgarity or profanity, bus misconduct, classroom disruption, verbal confrontation, truancy, and theft. Martinez was in 12th grade and was receiving high school course work while detained at the Douglas County Youth Center until July 2017, when he turned 18. He was then transferred to the Douglas County Corrections Center where he was no longer able to receive high school course work. Martinez told the probation officer that he would like to finish the requirements for a high school diploma and eventually enroll in college in a business program.

Regarding his current convictions, Martinez admitted to being involved in two robberies in one day (All Nations and Eddy's FasMart), and he admitted pointing a handgun at a store clerk during the All Nations robbery. Martinez claimed to be under the influence of marijuana on the day of the robberies. One month prior to committing the current offenses, Martinez had completed 18 months of probation for destruction of property (Martinez apparently damaged a chair at his parents' house after arguing with his father).

As part of the presentence investigation, the probation officer conducted a level of service/case management index. Martinez was assessed at a "high risk to reoffend." He scored in the "very high" or "high" risk range for the following domains: Companions, Antisocial Pattern, Family/Marital, Leisure/Recreation, and Procriminal Attitude/Orientation. According to the probation officer, "community supervision does not appear suitable at this time and a Straight Sentence is warranted."

At the sentencing hearing, the district court stated it had received and reviewed the presentence investigation (PSI). As additions to the PSI, Martinez offered several letters of support and numerous certificates reflecting achievements and additional course work he had completed while at the Douglas County Youth Center; the court made all of these part of the PSI.

Martinez' counsel argued,

[P]erhaps some of [Martinez'] problems were caused by poor peer group decision making. People that he was friends with or was surrounded by in social situations. And I would submit that that was part of what happened in this case. Although, not the sole cause of it. But not that Mr. Martinez was forced to do what he did, but I think that the other individuals

involved were clearly bad influences on him. But I don't think that the decisions involved in the robberies in this case really define Mr. Martinez. I think that the Court has both through the letters that were already contained in the PSI from family, and with the additional information that I have provided, reflect a history of positive behavior as opposed to a history of negative behavior.

Counsel specifically noted that Martinez was a mentor and a positive role model for the children in the Boys and Girls Club, that he had participated in voluntary therapy at the Douglas County Youth Center, and that he attended schooling while at the Youth Center. Counsel also referenced letters from Martinez' family that "show his unselfishness" and "how much his family cares for him." Counsel believed that Martinez could be rehabilitated and asked the court to consider probation.

Martinez personally addressed the court and stated:

Your Honor, I want to start by saying that I do understand that -- what the circumstances of my case could be. And I do understand how dangerous it was and how I basically held other people's life [sic] in my hands. And I know -- something that I want to say about that is that I'm sorry for my victims and I'm remorseful for it. If I could take it back. I would take it back. You know, make things better, which I should have been doing, you know, from the jump. I also want to say that none of my family has ever been to jail before. I'm the first one ever. I can promise my family that whatever the results that it won't happen again. They've been -- because of my crime, you know, you know, my grandmother which is here, my mom, my dad, brother and sister. And their husbands, which are here to support me today.

Excuse me. They offer of how they -- they know how I am. They know my personality. And I don't like doing the wrong things, you know, I always worked for my money. I didn't -- I just feel like I just made a poor choice, which now I've got to face the consequences for what it was. And I want to finish my school and keep going with my education. I'm only eighteen, like he said. I just turned eighteen. I only need a few credits to graduate high school. I want to do that. I know that my parents need me at home. And also do [sic] my nephews and my little sister, too. Because they've been working a lot. I'm their role model. And they are -- my little sister is two. One of any [sic] nieces is two. The other one is one. But like I said, when [sic] both of my nieces were a year old, and I want to be there for them.

The district court asked the State if it wished to be heard, and the State responded, "We have nothing and will stand on the presentence, Your Honor."

The district court stated it had taken into account all of the information and argument presented at the hearing, and all of the information in the PSI, including Martinez' "age, mentality, education, experience, [his] background, very minimal criminal history, the nature of this offense, including the presence of violence in this offense, and motivation for this offense." The court stated "these are the hardest cases that come before the Court . . . people within your age range, making a really bad decision." But the court noted that Martinez had not made a single bad decision, but rather he made several bad decisions that day that "could have been very violent crimes and were

violent crimes." After recounting that Martinez held the gun and pointed it at the clerk in the All Nations robbery, and that he participated in the other robbery assisting the person with the gun, the court stated that Martinez' "decision making and [his] participation in these crimes was serious and that a sentence of probation would promote disrespect for the law and depreciate the seriousness of these three crimes." The court sentenced Martinez to 6 to 8 years' imprisonment for each robbery conviction and 4 to 6 years' imprisonment for the attempted use of a deadly weapon conviction; all sentences were to be served consecutively. Thus, Martinez was sentenced to a total of 16 to 22 years' imprisonment.

Martinez argues on appeal that the court erred by "focusing solely on the underlying conduct and not properly accounting for [his] youth and other positive aspects presented to the court." Brief for appellant at 11. He claims his past completion of a term of probation in juvenile court "shows that he is amenable to treatment such as counseling and alternatives to incarceration available in juvenile court." *Id.* at 6. He asserts that "there was no evidence of any propensity on the part of Martinez to be involved in robberies on his own," and no evidence that "Martinez was a 'criminal street gang member' nor a history of any serious unlawful conduct." *Id.* at 6-7.

We disagree with Martinez' claim that the district court focused solely on the nature of the underlying conduct. The district court specifically stated that it had taken into account all of the information and argument presented at the hearing, and all of the information in the PSI, including the relevant sentencing factors. And the court specifically mentioned that persons Martinez' age present some of the hardest cases for the court -- another indication that it considered Martinez' youth.

Having considered the relevant factors in this case, we find that Martinez' sentences were not excessive or an abuse of discretion and his sentences are therefore affirmed. See *State v. Dill*, 300 Neb. 344, 913 N.W.2d 470 (2018) (sentence imposed within statutory limits will not be disturbed on appeal absent abuse of discretion by trial court).

## VI. CONCLUSION

For the foregoing reasons, we affirm the district court's order denying Martinez' motion to transfer jurisdiction of the case to the juvenile court. We also affirm Martinez' sentences.

AFFIRMED.