IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

STATE V. SKEELS

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLANT,

V.

DAVID L. SKEELS, APPELLEE.

Filed December 15, 2020.    No. A-20-458.

Appeal from the District Court for Custer County: KARIN L. NOAKES, Judge. Affirmed.

Steven R. Bowers, Custer County Attorney, for appellant.

Michael S. Borders, of Borders Law Office, for appellee.

PIRTLE, Chief Judge, and RIEDMANN and ARTERBURN, Judges.

PIRTLE, Chief Judge.

### INTRODUCTION

Appellee, David L. Skeels, was convicted in the district court for Custer County of felony motor vehicle homicide, attempted second degree assault, and reckless driving. Across all three counts, Skeels was sentenced to 5 years' probation and 90 days' jail time as a condition of probation. The State appeals, claiming that the sentences are excessively lenient and assigning other sentencing related errors. For the reasons that follow, we affirm.

### BACKGROUND

Skeels was originally charged with one count of motor vehicle homicide, a Class IIIA felony; two counts of second degree assault, each a Class IIA felony; and one count of reckless driving, a Class III misdemeanor.

Pursuant to a plea agreement, the State filed an amended information, dismissing one of the counts of second degree assault and amending the other to attempted second degree assault.

- 1 -

Skeels entered a plea of guilty to the charges in the amended information: felony motor vehicle homicide, attempted second degree assault, and reckless driving. The State provided a factual basis to support the pleas.

The record shows that on October 23, 2018, Skeels was driving a semi-tractor with his son as a passenger on a country road in Custer County, Nebraska. At a highway intersection, Skeels failed to stop at a marked stop sign. When he proceeded into the intersection, Skeels collided with a pickup truck that was driving on the highway. As a result of the collision, the pickup truck's driver was severely injured, and the pickup truck's passenger was killed. Law enforcement investigators determined that at the time of the collision, Skeels was driving too fast, was distracted, and had failed to pay attention to the road or to the marked stop sign. There was no evidence that Skeels was using a cell phone at the time of the crash or that he was under the influence of alcohol or other substances.

The district court found Skeels' pleas to be knowingly, voluntarily, and intelligently made and further found Skeels to be guilty beyond a reasonable doubt on all three counts. The district court ordered a presentence investigation to be completed by the probation office and scheduled a sentencing hearing.

At the sentencing hearing on June 18, 2020, the district court sentenced Skeels on count I, motor vehicle homicide, to 5 years' probation and 60 days' jail time as a condition of that probation; on count II, attempted second degree assault, to 5 years' probation and 30 days' jail time as a condition of that probation; and on count IV, reckless driving, to 2 years' probation and 30 days' jail time as a condition of that probation. The district court ordered all three probation terms to be served concurrently, and it ordered the 30 days' jail time on count IV to be served concurrently with the 30 days' jail time on count II. In total, Skeels was sentenced to 5 years' probation and 90 days' jail time as a condition of probation.

Following the sentencing hearing, the district court issued a sentencing order that accurately reflected the court's oral pronouncements with respect to counts I and IV. With respect to count II, the sentencing order stated that the term of probation would be served concurrently with the probation imposed on "Counts I and *III*." (Emphasis supplied.) On August 17, 2020, the district court issued an order nunc pro tunc finding that the original sentencing order contained a clerical error. The court corrected the sentencing order so that it stated that the term of probation imposed on count II was to run concurrently to the terms of probation on counts I and IV.

The State appeals, alleging that the sentences imposed on Skeels were excessively lenient and failed to conform to the law.

ASSIGNMENTS OF ERROR

Restated, the State assigns that the district court erred in (1) imposing excessively lenient sentences on Skeels; (2) imposing jail terms as a condition of Skeels' probation; (3) failing to order postrelease supervision on Skeels' felony convictions; and (4) issuing a sentencing order that was legally impossible.

## STANDARD OF REVIEW

Whether an appellate court is reviewing a sentence for its leniency or its excessiveness, a sentence imposed by a district court that is within the statutorily prescribed limits will not be disturbed on appeal unless there appears to be an abuse of the trial court's discretion. *State v. Gibson*, 302 Neb. 833, 925 N.W.2d 678 (2019). A judicial abuse of discretion exists only when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right, and denying a just result in matters submitted for disposition. *State v. Parminter*, 283 Neb. 754, 811 N.W.2d 694 (2012).

Statutory interpretation is a question of law that an appellate court resolves independently of the trial court. *State v. Thompson*, 294 Neb. 197, 881 N.W.2d 609 (2016).

## ANALYSIS

*Excessively Lenient Sentences.*

The State argues that the sentences imposed on Skeels were excessively lenient and should be set aside. Skeels was convicted of motor vehicle homicide in violation of Neb. Rev. Stat. § 28-306(3)(a) (Reissue 2016), a Class IIIA felony; attempted second degree assault in violation of Neb. Rev. Stat. § 28-201(1)(b) and (4)(c) (Reissue 2016), a Class IIIA felony; and reckless driving in violation of Neb. Rev. Stat. §§ 60-6,213 and 60-6,215 (Reissue 2010), a Class III misdemeanor. A Class IIIA felony does not have a minimum sentence for imprisonment and carries a maximum penalty of up to 3 years' imprisonment, a $10,000 fine, or both. Neb. Rev. Stat. § 28-105 (Reissue 2016). A Class III misdemeanor does not have a minimum sentence for imprisonment and carries a maximum penalty of up to 3 months' imprisonment, a fine of $500, or both. Neb. Rev. Stat. § 28-106 (Reissue 2016). Whenever a court considers a sentence for an offender convicted of either a misdemeanor or a felony for which mandatory or mandatory minimum imprisonment is not specifically required, the court may withhold sentence of imprisonment. Neb. Rev. Stat. § 29-2260(2) (Reissue 2016). Skeels was sentenced to terms of probation on all three counts, and these sentences are within the statutory limits.

A sentencing court is not limited in its discretion to any mathematically applied set of factors. *State v. Parminter, supra*. The appropriateness of a sentence is necessarily a subjective argument and includes the sentencing judge's observation of the defendant's demeanor and attitude and all of the facts and circumstances surrounding the defendant's life. *Id.* But the court must have some reasonable basis for imposing a particular sentence. *Id.*

We do not review the record de novo in order to determine whether a sentence is appropriate. *State v. Antoniak*, 16 Neb. App. 445, 744 N.W.2d 508 (2008). In determining whether a sentence is excessively lenient, we consider the following statutory factors: (1) the nature and circumstances of the offense; (2) the history and characteristics of the defendant; (3) the need for the sentence imposed to afford deterrence; (4) the need for the sentence to protect the public from further crimes of the defendant; (5) the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (6) the need for the sentence to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; and (7) any other matters

appearing in the record that the appellate court deems pertinent. *State v. Felix*, 26 Neb. App. 53, 916 N.W.2d 604 (2018). See, also, Neb. Rev. Stat. § 29-2322 (Reissue 2016).

Here, the record shows that at the time of sentencing, Skeels was 67 years of age and married. He had obtained a diploma through the GED program and had maintained steady employment throughout his adult life. At the time of sentencing, Skeels was employed by the Ansley Housing Authority in Ansley, Nebraska. The presentence investigation report (PSR) indicated that Skeels' criminal history consisted of 11 motor vehicle violations, 8 of which were infractions for overweight axles. Skeels also self-reported a minor in possession charge and a term of probation served in Kansas following an incident where he threatened another man with a gun. The PSR found Skeels to be an overall "low risk" and reflected that he did not score as high risk in any of the individual categories evaluated in the Level of Service/Case Management Inventory (LS/CMI) conducted by the probation office. The LS/CMI is a "validated risk/need assessment tool designed specifically to determine the degree of risk the Defendant presents to recidivate."

The probation officer who prepared the PSR stated:

I would consider [Skeels] to be in the pre-contemplative stage of change. It seems [Skeels] is minimizing his actions during this pending case. During the interview he kept stating this incident was "just an accident." He is willing to comply with an order of probation and stated he is going to be attending counseling. [Skeels] has been placed on probation in the past on one occasion. . . . Due to the seriousness of the offense and the victim's families [sic] statements, this officer would recommend a term of incarceration be imposed along with post release supervision.

At the sentencing hearing, the district court found that Skeels had no significant prior criminal history and that he was an appropriate candidate for probation. The probationary sentences imposed on Skeels contained a number of terms and conditions. In addition to obeying all laws and refraining from unlawful conduct, Skeels must avoid social contact with persons having criminal records. He must serve a period of jail time on each of the three counts, totaling 90 days. He must obtain a travel permit before leaving the state of Nebraska. He must maintain regular employment or otherwise keep productively busy. He must not own or possess a firearm or dangerous weapon. He must successfully complete a victim empathy course and must write a letter of apology to the victim's family. Skeels must submit his person, premises, and vehicle to search and seizure at any time by law enforcement or probation officer, with or without a search warrant. He must obtain a mental health evaluation and follow any recommendations contained in that evaluation, and he must complete any programming deemed necessary by the probation office at his own expense. Finally, Skeels' driver's license was suspended for a period of 1 year and he was not permitted to operate any vehicle that requires a commercial driver's license for 5 years.

The State argues that several factors indicate that the district court abused its discretion in sentencing Skeels. First, the State highlights that the PSR found Skeels was at the maximum risk range for truthfulness and that he made inconsistent statements over the course of the case's history. However, even though Skeels' version of events was not entirely consistent throughout the case, he never denied that he was the cause of the collision, and all of Skeels' statements to law enforcement and to the probation office are contained within the PSR. Moreover, there was

no evidence Skeels was under the influence of drugs or alcohol at the time of the collision. At the sentencing hearing, the district court stated that it had reviewed the PSR and considered the appropriate sentencing factors. There is no indication that the court improperly relied on any particular statement made by Skeels.

The State further alleges that the district court misrepresented facts when it stated that Skeels "has no significant criminal history" and was therefore wrong to rely on that factor when determining Skeels was a suitable candidate for probation. Brief for appellant at 14. The criminal record contained in the PSR shows that Skeels has not been convicted of any other crimes beyond traffic offenses, for which he was subjected to a fine. Skeels further self-reported that he received a minor in possession conviction at the age of 18 and that at the age of 52, he was placed on probation in Kansas following an incident where he displayed a gun at a knife-wielding man who was attempting to steal something from his semi-truck. The record shows Skeels was successfully discharged from probation in that case. Skeels had no prior felony convictions. Upon review of the record, we determine that the district court did not err when considering Skeels' criminal history as a factor supporting his candidacy for probation.

Finally, the State argues that the district court improperly referred to Skeels' conviction for motor vehicle homicide as a misdemeanor rather than a felony at the sentencing hearing. At the hearing, the district court opened its sentencing remarks by stating: "Every time I sentence someone on a misdemeanor motor vehicle homicide I say this. This is the toughest part of my job always because by definition a misdemeanor motor vehicle homicide is where one human being unintentionally causes the death of another human being." The district court then went on to discuss the difficulty of imposing a just sentence in motor vehicle homicide cases and ultimately sentenced Skeels to a term of probation on each count. The State correctly points out that Skeels' conviction for motor vehicle homicide was a felony and not a misdemeanor, and that the district court may have spoken in error. However, at the beginning of the sentencing hearing, the district court correctly stated that Skeels had been convicted of felony motor vehicle homicide. Likewise, the court's written sentencing order accurately reflected Skeels' convictions. We therefore conclude that the totality of the facts show that the district court properly considered that Skeels had been convicted of felony motor vehicle homicide when issuing its sentence.

Based on the foregoing, and upon consideration of the statutory factors identified above, we conclude that there was a reasonable factual basis for the sentences imposed and that the sentences did not constitute an abuse of the district court's discretion. Skeels' sentences were not excessively lenient.

*Jail Terms as Conditions of Probation.*

The State assigns that the district court erred in imposing terms of jail time as conditions to each of Skeels' sentences of probation. The State claims that the district court failed to comply with the statutory requirements of Neb. Rev. Stat. § 29-2262 (Reissue 2016) and that therefore, the sentences are improper.

When a court sentences a defendant to probation, it may impose any conditions of probation that are authorized by statute. *State v. Dill*, 300 Neb. 344, 913 N.W.2d 470 (2018).

Whether a condition of probation imposed by the sentencing court is authorized by statute is a question of law. *State v. Rieger*, 286 Neb. 788, 839 N.W.2d 282 (2013).

In its opening brief, the State argued that § 29-2262(2)(b) does not permit jail time as a condition for probation for felony convictions. Section 29-2262(2)(b) states that the court may, as a condition of a sentence of probation, require the offender "[t]o be confined periodically in the county jail." The State's argument on this point appears to have been made in reliance on 2015 Neb. Laws, L.B. 605, which amended § 29-2262(2)(b) so that it permitted jail time as a condition of probation only for misdemeanors. However, 2016 Neb. Laws, L.B. 1094 removed the phrase "for misdemeanors" from the statute. In its reply brief, the State acknowledges that this argument was made in reliance upon a previous version of § 29-2262 and that it does not apply to Skeels' convictions and sentences. Therefore, jail time was a permissible condition for the sentence of probation on all three counts, including Skeels' felony convictions.

However, the State further argues that the district court failed to meet the specific requirements of § 29-2262(3), which states that when jail time is imposed as a condition of probation, the court "shall advise the offender on the record the time the offender will serve in jail assuming no good time for which the offender will be eligible under section 47-502 is lost and assuming none of the jail time imposed as a condition of probation is waived by the court." It is true that although the district court clearly explained Skeels' sentences of probation, including the condition of jail time, the district court failed to give specific advisements regarding good time law under Neb. Rev. Stat. § 47-502 (Cum. Supp. 2018). But the State does not point to any precedent that holds the failure to give such advisements constitutes reversible error, and such failure is not in any way prejudicial to the State. We determine that this error is harmless.

We therefore conclude that Nebraska law permits a district court to impose jail time as a condition of probation for both misdemeanor and felony offenses, that the district court did not abuse its discretion in imposing jail time as a condition of Skeels' probation in this case, and that any failure to provide specific advisements at sentencing regarding "good time" was harmless error. This argument fails.

*Postrelease Supervision.*

The State next argues that the district court erred in failing to impose terms of postrelease supervision on Skeels' two felony sentences. Section 28-105 states that if a criminal defendant is convicted of a Class IIIA felony and is sentenced to a term of imprisonment, the court must also impose a minimum of nine months' postrelease supervision. The State argues that because the district court imposed jail time as a condition of Skeels' probation, it was therefore required to impose a term of postrelease supervision for his sentences for motor vehicle homicide and criminal attempt.

As stated above, a Class IIIA felony does not have a minimum sentence of imprisonment and carries a maximum penalty of up to 3 years' imprisonment, a $10,000 fine, or both. See § 28-105. However, whenever a court considers a sentence for an offender convicted of either a misdemeanor or a felony for which mandatory or mandatory minimum imprisonment is not specifically required, the court may withhold sentence of imprisonment and sentence the offender

to probation. § 29-2260(2). And as a condition of probation, the court may order the offender to serve jail time. See § 29-2262(2)(b).

Whether an imposition of jail time as a condition of probation on a Class IIIA felony requires the sentencing court to order a term of postrelease supervision is a matter of statutory interpretation, which is a question of law. See *State v. Thompson*, 294 Neb. 197, 881 N.W.2d 609 (2016). The fundamental objective of statutory interpretation is to ascertain and carry out the Legislature's intent. *Id.* In reading a penal statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense. *Id.* To the extent there is a conflict between two statutes, the specific statute controls over the general statute. *Id.*

Section 29-2260 makes it clear that when a sentencing court orders a sentence of probation, it is "withhold[ing] a sentence of imprisonment." Postrelease supervision is only required to be ordered "if imprisonment is imposed." See § 28-105. Reading these two statutes in conjunction, we determine that an imposition of jail time as a condition for probation does not constitute "imprisonment" for the purposes of mandatory postrelease supervision under § 28-105. Therefore, under such circumstances, postrelease supervision need not be imposed.

We determine that the district court did not err when it failed to impose a term of postrelease supervision when sentencing Skeels. This argument fails.

*Clerical Error in Sentencing Order.*

Finally, the State argues that the district court's oral pronouncement of sentence and written sentencing order were "legally impossible." Brief for appellant at 23. Specifically, the State points to a portion of the court's written sentencing order that references Skeels' sentence for "Count III," even though count III of the information was dismissed by the State as part of the plea bargain.

At the sentencing hearing, the district court stated that on count II, Skeels was ordered to serve a term of probation of 5 years, and that the sentences of probation on all three counts were to be served concurrently with one another. In contrast, the written sentencing order stated that the sentence on count II was to be served concurrently with "Counts I and *III.*" (Emphasis supplied.) The State argues that this error renders Skeels' sentences invalid.

However, we determine that the record demonstrates that this single reference to "Count III" was a mere clerical error that has since been corrected by the district court. A court has inherent power in a criminal case to correct its records to reflect the "truth," nunc pro tunc. *State v. Bol*, 288 Neb. 144, 846 N.W.2d 241 (2014). The purpose of an order nunc pro tunc is to correct a record which has been made so that it will truly record the action had, which through inadvertence or mistake was not truly recorded. *Id.* Clerical errors may be corrected by an order nunc pro tunc, but judicial errors may not. *Id.* Neb. Rev. Stat. § 25-2001(3) (Reissue 2016) allows a court to correct clerical mistakes found in the record even during the pendency of an appeal, up until the time the case is submitted for decision to the appellate court.

Here, after the State filed its opening brief, Skeels filed a motion in the district court requesting that the court issue an order clarifying its original written sentencing order. On August 17, 2020, the district court issued an order nunc pro tunc, which amended the reference to "Count

III" in the original sentencing order to read "Count IV." This change brought the written order into conformity with the district court's oral pronouncement at the sentencing hearing.

We determine that the clerical error complained of by the State has been properly corrected by the district court and that, therefore, this issue is now moot.

CONCLUSION

We conclude that the district court did not abuse its discretion in the sentences imposed and that the other arguments raised by the State fail. We therefore affirm Skeels' convictions and sentences.

AFFIRMED.