Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
03/29/2019 09:06 AM CDT

State of Nebraska, appellee, v.
Caleb A. Phillips, appellant.
___ N.W.2d ___

Filed March 29, 2019.    No. S-18-590.

1. **Statutes: Appeal and Error.** Statutory interpretation presents a question of law, which an appellate court reviews independently of the lower court.
2. **Sentences: Appeal and Error.** Whether a defendant is entitled to credit for time served and in what amount are questions of law, subject to appellate review independent of the lower court.
3. **Statutes: Intent: Appeal and Error.** When interpreting a statute, effect must be given, if possible, to all the several parts of a statute; no sentence, clause, or word should be rejected as meaningless or superfluous if it can be avoided. An appellate court must look to the statute's purpose and give to the statute a reasonable construction which best achieves that purpose, rather than a construction which would defeat it.
4. **Statutes: Time: Words and Phrases.** Unless the context shows otherwise, the word "month" used in a Nebraska statute means "calendar month." A calendar month is a period terminating with the day of the succeeding month, numerically corresponding to the day of its beginning, less one.
5. **Sentences: Probation and Parole: Appeal and Error.** Because a court has discretion under Neb. Rev. Stat. § 29-2268(2) (Reissue 2016) to impose, upon revocation, any term of imprisonment up to the remaining period of post-release supervision, an appellate court will not disturb that decision absent an abuse of discretion.
6. **Judgments: Appeal and Error.** An abuse of discretion occurs when a court's reasons or rulings are clearly untenable and unfairly deprive the litigant of a substantial right and a just result.

Appeal from the District Court for Lancaster County: John A. Colborn, Judge. Affirmed.

Joe Nigro, Lancaster County Public Defender, and Jennifer M. Houlden for appellant.

Douglas J. Peterson, Attorney General, and Nathan A. Liss for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, and Papik, JJ.

Funke, J.

Caleb A. Phillips appeals from his 365 days of imprisonment imposed as a result of his revocation from post-release supervision. Phillips absconded from post-release supervision and failed to appear at the hearing on the State's motion for revocation. He was subsequently arrested and spent 98 days in jail prior to revocation.

This appeal raises the novel issue of how a court should, for purposes of imposing a term of imprisonment upon revocation, calculate a probationer's "remaining period of post-release supervision" under Neb. Rev. Stat. § 29-2268(2) (Reissue 2016). We discuss in this opinion, as a matter of first impression, how the time a probationer has absconded and how the time a probationer has spent in jail prior to revocation factor into that calculation. We affirm.

BACKGROUND

In May 2016, the State filed an information against Phillips in the district court for Lancaster County which alleged one count of unlawful discharge of a firearm, a Class ID felony. Phillips pled no contest to one count of terroristic threats, a Class IIIA felony. On February 8, 2017, the court imposed a sentence of 3 years' imprisonment and 18 months of post-release supervision and credited Phillips for 339 days served. Phillips was originally scheduled to participate in post-release supervision from September 4, 2017, through March 4, 2019.

On October 23, 2017, Phillips' probation officer filed a report alleging that Phillips had violated the conditions of his post-release supervision. The report alleged that Phillips had

completed only his first scheduled drug test, which he failed; missed the other seven drug tests that were scheduled; and absconded on September 28. The Lancaster County Attorney's office filed a motion to revoke post-release supervision and sent Phillips a letter advising him to appear and be arraigned at the revocation hearing scheduled for December 6. Phillips failed to appear, and a warrant was issued for his arrest. Phillips was arrested on February 5, 2018.

On April 16, 2018, the court held the rescheduled hearing on the State's motion to revoke post-release supervision. Phillips entered a plea of no contest, which the court accepted. The court found Phillips guilty of the allegations set forth within the motion for revocation, ordered an updated presentence report, and scheduled a sentencing hearing for May 14.

At the May 14, 2018, hearing, the district court revoked Phillips' post-release supervision and considered the imposition of additional imprisonment. Phillips argued that the maximum imprisonment he could receive would be 295 days. This figure represented the period of time from the date of revocation, May 14, 2018, to the date Phillips was originally scheduled to complete post-release supervision, March 4, 2019. In addition, Phillips argued that he was entitled to 98 days' credit for the time he spent in jail from his arrest, on February 5, to the date of revocation, May 14.

The court disagreed on both points. The court started with the figure of 295 days provided by Phillips and added 127 days, which represented the period of time that Phillips had absconded, from September 28, 2017, to the date of Phillips' arrest, February 5, 2018. As a result, the court found that the maximum term of imprisonment that Phillips could receive upon revocation of post-release supervision was 422 days. The court further determined that Phillips was not entitled to credit for the time he spent in jail prior to revocation. As a result, the court ordered Phillips to serve a term of imprisonment of 365 days in the county jail with 0 days' credit for time served. Phillips appealed.

## ASSIGNMENTS OF ERROR

Phillips assigns, restated, that the district court erred in (1) extending Phillips' remaining term of post-release supervision upon revocation, (2) failing to give Phillips credit for time served, and (3) imposing an excessive sentence.

## STANDARD OF REVIEW

[1,2] Statutory interpretation presents a question of law, which an appellate court reviews independently of the lower court.[1] Whether a defendant is entitled to credit for time served and in what amount are questions of law, subject to appellate review independent of the lower court.[2] An appellate court will not disturb a decision to impose imprisonment up to the remaining period of post-release supervision after revocation absent an abuse of discretion by the trial court.[3]

## ANALYSIS

This appeal presents the opportunity to address how a court should calculate a probationer's "remaining period of post-release supervision"[4] and thus determine the maximum term of imprisonment upon revocation of post-release supervision. We also address whether a probationer is entitled to credit for time served in jail prior to revocation.

Post-release supervision is a relatively new concept in Nebraska sentencing law,[5] introduced into Nebraska's statutes by 2015 Neb. Laws, L.B. 605, which amended Nebraska law to, among other things, reduce the penalties for certain felonies. Before L.B. 605, Class IIIA felonies were punishable by a maximum of 5 years' imprisonment, a $10,000 fine, or both,

---

[1] *State v. Kennedy*, 299 Neb. 362, 908 N.W.2d 69 (2018).

[2] *State v. Leahy*, 301 Neb. 228, 917 N.W.2d 895 (2018).

[3] See *State v. Wal, ante* p. 308, 923 N.W.2d 367 (2019).

[4] § 29-2268.

[5] See, *State v. Dill*, 300 Neb. 344, 913 N.W.2d 470 (2018); *Kennedy, supra* note 1.

with no minimum term of imprisonment.[6] L.B. 605 split the sentence for Class IIIA felonies into an initial period of imprisonment for a maximum of 3 years and, if imprisonment is imposed, added a period of post-release supervision having an 18-month maximum and 9-month minimum term.[7]

The Nebraska Probation Administration Act[8] provides the statutory framework governing post-release supervision. Post-release supervision is defined as "the portion of a split sentence following a period of incarceration under which a person found guilty of a crime . . . is released by a court subject to conditions imposed by the court and subject to supervision by the [Office of Probation Administration]."[9] Post-release supervision is a form of probation.[10] A person sentenced to post-release supervision is referred to as a "[p]robationer."[11]

All sentences of post-release supervision are served under the jurisdiction of the Office of Probation Administration and are subject to conditions imposed under § 29-2262 and subject to sanctions authorized under § 29-2266.02.[12] A court may revoke a probationer's post-release supervision upon finding that the probationer has violated one of the conditions of his or her post-release supervision.[13] The court shall not do so except after a hearing upon proper notice where the violation is established by clear and convincing evidence.[14] Clear and convincing evidence means that amount of evidence which produces in

---

[6] See, Neb. Rev. Stat. § 28-105(1) (Cum. Supp. 2014); *State v. Aguallo*, 294 Neb. 177, 881 N.W.2d 918 (2016).

[7] Neb. Rev. Stat. § 28-105 (Cum. Supp. 2018).

[8] See Neb. Rev. Stat. §§ 29-2246 to 29-2269 (Reissue 2016 & Cum. Supp. 2018).

[9] § 29-2246(13).

[10] See, § 29-2246(4); *Dill, supra* note 5; *Kennedy, supra* note 1.

[11] § 29-2246(5).

[12] See § 28-105(5).

[13] See § 29-2268(2).

[14] See § 29-2267(1).

the trier of fact a firm belief or conviction about the existence of a fact to be proved.[15]

Once a court revokes a probationer's post-release supervision, is must then determine the appropriate term of imprisonment to be imposed. The controlling statute is § 29-2268, which provides:

> (2) If the court finds that a probationer serving a term of post-release supervision did violate a condition of his or her post-release supervision, it may revoke the post-release supervision and impose on the offender a term of imprisonment up to the remaining period of post-release supervision. The term shall be served in an institution under the jurisdiction of the Department of Correctional Services or in county jail subject to subsection (2) of section 28-105.
>
> (3) If the court finds that the probationer did violate a condition of his or her probation, but is of the opinion that revocation is not appropriate, the court may order that:
>
> . . . .
>
> (e) The probationer's term of probation be extended, subject to the provisions of section 29-2263.

The parties offer differing views regarding the approach taken by the court in arriving at the 365-day term of imprisonment. Phillips argues the court erred by implementing a hybrid approach under both § 29-2268(2) and (3). He contends that the court proceeded under § 29-2268(2) when it revoked his post-release supervision, but also proceeded under § 29-2268(3)(e) when the court included the 127 days of absconsion time in calculating the "remaining period of post-release supervision." Phillips argues the court thereby erred, based on our opinion in *State v. Kennedy*.[16]

In *Kennedy*, we determined that once a district court has found a violation of post-release supervision, it may "proceed

---

[15] *State v. Johnson*, 287 Neb. 190, 842 N.W.2d 63 (2014).

[16] *Kennedy, supra* note 1.

under *either* subsection (2) or subsection (3) of § 29-2268."[17] Phillips also argues that once the court revoked post-release supervision, it could not also extend the term of post-release supervision. Therefore, Phillips contends that the maximum imprisonment the court could have imposed was 295 days. As indicated, 295 days represents the amount of time between the date of revocation and the end date of Phillips' original term of post-release supervision.

The State argues that the term of imprisonment imposed by the court was appropriate based on the State's interpretation of the phrase "remaining period of post-release supervision" under § 29-2268(2). The State points to our recognition in *Kennedy* that the Nebraska Probation Administration Act sometimes refers to probation and post-release supervision interchangeably,[18] and other times, separately.[19] The State contends that when the act is read as a whole, the phrase "remaining period of post-release supervision" does not represent a fixed number. The State relies on § 29-2263(5), which provides, "[w]henever a probationer disappears or leaves the jurisdiction of the court without permission, the time during which he or she keeps his or her whereabouts hidden or remains away from the jurisdiction of the court shall be added to the *original term of probation*." (Emphasis supplied.) The State argues that if the reference to the term of probation under § 29-2263(5) is synonymous with the term of post-release supervision referenced in § 29-2268(2), then the court was free to add Phillips' absconsion time to his "remaining period of post-release supervision." As a result, the State contends that the maximum term the court could have imposed was 295 days plus 127 days of absconsion time, for a total of 422 days

---

[17] *Id*. at 371, 908 N.W.2d at 75 (emphasis supplied).

[18] *Kennedy, supra* note 1. See, e.g., §§ 29-2250, 29-2251, 29-2258, 29-2262, and 29-2267.

[19] *Kennedy, supra* note 1. See, e.g., §§ 29-2263(2) and (3) and 29-2268(1) and (2).

of imprisonment. The State argues Phillips' 365-day term of imprisonment is therefore valid.

Based on our decision in *Kennedy*, we agree that once the district court revoked Phillips' post-release supervision, it no longer had available the various options under § 29-2268(3), including the option to extend the probationer's term under § 29-2268(3)(e). But the district court here was not extending Phillips' term of post-release supervision under § 29-2268(3); it originally sentenced him to 18 months' post-release supervision, and that term did not change. Instead, the district court was simply calculating how much of the 18-month term had been served, and how much remained to be served, in order to determine the "remaining period of post-release supervision" under § 29-2268(2). It did so by considering how many days Phillips had actually served on post-release supervision. The district court found the 127 days Phillips had absconded[20] from post-release supervision by purposely avoiding supervision should not be considered time he had served on the 18-month term of post-release supervision.

We have not previously considered whether absconsion can be taken into consideration when calculating the time remaining on a term of post-release supervision under § 29-2268(2). Nor have we addressed generally how a court is to calculate the "remaining period of post-release supervision" under § 29-2268(2). While our analysis differs somewhat from that of the district court, we ultimately agree with its disposition.

### REMAINING PERIOD OF POST-RELEASE SUPERVISION

[3] When interpreting a statute, effect must be given, if possible, to all the several parts of a statute; no sentence, clause, or word should be rejected as meaningless or superfluous if it can be avoided.[21] An appellate court must look to the statute's

---

[20] See § 29-2266(1).

[21] *Kennedy, supra* note 1.

purpose and give to the statute a reasonable construction which best achieves that purpose, rather than a construction which would defeat it.[22]

In *Kennedy*, we noted that the reference to probation in § 29-2268(1) was not used interchangeably with the reference to post-release supervision in § 29-2268(2) and we explained that the disposition available to a court differs based on whether a probationer is alleged to have violated the terms of probation or post-release supervision. We stated that once a district court finds a violation of post-release supervision, the court must proceed under either subsection (2) or subsection (3) of § 29-2268 and that this statute "does not authorize any disposition not therein enumerated."[23]

Here, the district court proceeded under § 29-2268(2). And, as part of calculating the time remaining on Phillips' term of post-release supervision under § 29-2268(2), it took into account the number of days Phillips absconded from supervision. Phillips contends this was error, but we disagree.

When determining the amount of time "remaining" on a period of post-release supervision, courts are not required to turn a blind eye to a probationer's absconsion from supervision. As the State notes in its brief, to conclude otherwise would mean that "if a person refuses to comply with the provisions of their post-release supervision or absconds altogether, as [Phillips] did, the clock keeps running and the period of noncompliance counts as time served toward the person's sentence of post-release supervision."[24] The State's position is in line with numerous federal courts of appeal which have held that a defendant's term of supervised release is tolled during a period in which the defendant has absconded from supervision.[25] As the Third Circuit recently observed, to hold

---

[22] *Id.*

[23] *Id*. at 371, 908 N.W.2d at 75.

[24] Brief for appellee at 8.

[25] See *United States v. Island*, 916 F.3d 249 (3d Cir. 2019) (collecting cases).

otherwise would not serve the rehabilitative goals of supervised release and would credit defendants for their misdeeds.[26] We agree that noncompliance to the degree of absconsion suggests that a probationer has ceased serving his or her post-release supervision sentence, and this fact may be taken into consideration by a court when calculating the time served on post-release supervision.

While federal courts have held that a defendant's term of supervised release is tolled during a period of absconsion even though the federal statute is silent on that point,[27] our interpretation finds statutory support in § 29-2263(5), which provides: "Whenever a probationer disappears or leaves the jurisdiction of the court without permission, the time during which he or she keeps his or her whereabouts hidden or remains away from the jurisdiction of the court shall be added to the original term of probation." There are no reported appellate opinions construing or applying this statute, but its purpose is obvious: The Legislature did not want probationers to be able to hide from supervision and simultaneously demand credit toward completing their term of probation or post-release supervision. Stated differently, a probationer who has absconded has not actually served those days and can be required to do so. We see no abuse of discretion in taking this policy into account when calculating the time remaining on post-release supervision for purposes of § 29-2268(2).

Here, the district court found Phillips was absconded from September 28, 2017, to his arrest and detention on February 5, 2018, and it took that into account when determining how many days he had served on his 18-month period of post-release supervision and, consequently, how much time was remaining on his 18-month term. We find no abuse of discretion in considering Phillips' absconsion in this manner.[28]

---

[26] *Id.*

[27] See *id.*

[28] See *Wal, supra* note 3.

We hold that when calculating the "remaining period of post-release supervision" under § 29-2268(2), courts must first identify the number of days the probationer was originally ordered to serve on post-release supervision. As we explain, this may require converting a term pronounced in a number of months into one consisting of a number of days. This is done by counting the number of days from the commencement of post-release supervision to the date of the revocation, less any days of absconsion. Finally, the court calculates the "remaining period of post-release supervision" by subtracting the number of days actually served from the number of days ordered to be served.

[4] Section 28-105(1) defines periods of post-release supervision in terms of months. When a court has pronounced the period of post-release supervision in terms of months, that period will need to be converted to a number of days in order to calculate the "remaining period of post-release supervision" under § 29-2268(2). Unless the context shows otherwise, the word "month" used in a Nebraska statute means "calendar month."[29] A calendar month is a period terminating with the day of the succeeding month, numerically corresponding to the day of its beginning, less one.[30] However, we must also consider Neb. Rev. Stat. § 25-2221 (Reissue 2016), which provides in part as follows: "Except as may be otherwise more specifically provided, the period of time within which an act is to be done in any action or proceeding shall be computed by excluding the day of the act, event, or default after which the designated period of time begins to run."[31]

Here, Phillips was ordered to serve 18 months' post-release supervision commencing September 4, 2017. As a result, barring any period of absconsion, Phillips would have completed his post-release supervision on March 4, 2019, which equated

---

[29] *Geddes v. York County*, 273 Neb. 271, 729 N.W.2d 661 (2007).

[30] *Id.*

[31] See *State v. Hirsch*, 245 Neb. 31, 511 N.W.2d 69 (1994).

to 546 days. We digress to remind the bench and bar that the outcome of converting a period of months to a number of days will vary depending on the date that period commences and the length of the months falling within that particular period. Here, the 18-month period equated to 546 days. But that will not always be so, and courts should perform the calculation by applying the statutory computation rules to the particular facts of each sentence.

The court found that after serving 24 days of post-release supervision, Phillips absconded for a period of 127 days. Because the court found Phillips' absconsion began on September 28, 2017, and ended when he was rearrested on February 5, 2018, he actually was absconded for a period of 130 days. Phillips' post-release supervision was revoked on May 14, 2018, 98 days after his rearrest. On the date of revocation, Phillips had actually served 122 days (24+98) of his original 546-day term of post-release supervision. As a result, on the date of his revocation, Phillips had 424 days remaining on his post-release supervision. Our calculations are set forth in the appendix attached hereto and incorporated herein by reference. Therefore, the court's imposition of a 365-day term of imprisonment was within the statutory range. Phillips' first assignment of error is without merit.

## CREDIT FOR TIME SERVED

This brings us to Phillips' argument that the court was required to give him credit for the time he spent in jail pending revocation. Phillips argues that the presentence investigation report indicates he served 98 days in jail pending revocation and that the court erred by awarding Phillips 0 days for time served. The State argues that Phillips received credit for the days he spent in jail, because the court did not include that time when it calculated Phillips' maximum possible term of imprisonment upon revocation. As our calculations above demonstrate, the days Phillips spent in jail pending revocation are considered days he actually served against his 18-month period of post-release supervision. As such, those days should

not also be credited against Phillips' term of imprisonment upon revocation.

To support his argument for jail credit, Phillips relies upon Neb. Rev. Stat. § 47-503 (Reissue 2010), which provides in relevant part:

> (1) Credit against a jail term shall be given to any person sentenced to a city or county jail for time spent in jail as a result of the criminal charge for which the jail term is imposed or as a result of conduct upon which such charge is based. Such credit shall include, but not be limited to, time spent in jail . . . .

But § 47-503 does not apply to the time Phillips spent in jail, because he had not yet been revoked from supervision and was still serving the post-release supervision portion of his original split sentence. We find that the 98 days Phillips spent in jail were not "as a result of the criminal charge for with the jail term [was] imposed" under § 47-503, but, rather, were a result of violating the terms of supervision.

The imposition of a term of post-release supervision that includes conditions is part of the sentence.[32] Under Neb. Ct. R. § 6-1904(A) (rev. 2016), "the court shall, at the time a sentence is pronounced, impose a term of incarceration and a term of post-release supervision pursuant to Neb. Rev. Stat. § 29-2204.02(1), and shall enter a separate post-release supervision order that includes conditions pursuant to Neb. Rev. Stat. § 29-2262."

Phillips violated the conditions of his supervision by failing to report to his probation officer and failing to refrain from unlawful conduct, and his probation was revoked for these violations.[33] These conditions were imposed upon Phillips under his original sentence. Phillips did not spend 98 days in jail prior to revocation as a result of a criminal charge, but, rather,

---

[32] See, *Dill, supra* note 5; *State v. Phillips*, 297 Neb. 469, 900 N.W.2d 522 (2017).

[33] See § 29-2262(2)(a) and (k).

as a part of the administration of his sentence of post-release supervision. As explained above, once a court has revoked a probationer under § 29-2268(2), the court is not authorized to order any disposition not enumerated therein. The Legislature has not demonstrated within § 29-2268 that jail credit should be given for time served prior to revocation. In addition, the record indicates that Phillips spent time in jail as a result of his failure to appear.[34]

The court did not err in denying Phillips' request for jail time credit, because it credited the 98 days he spent in jail as time actually served on his term of post-release supervision. Phillips' second assignment of error is without merit.

### Court Did Not Abuse Discretion

[5,6] Lastly, Phillips claims that the 365-day term of imprisonment was excessive. Because a court has discretion under § 29-2268(2) to impose, upon revocation, any term of imprisonment up to the remaining period of post-release supervision, an appellate court will not disturb that decision absent an abuse of discretion.[35] An abuse of discretion occurs when a court's reasons or rulings are clearly untenable and unfairly deprive the litigant of a substantial right and a just result.[36]

Based upon the record, which includes the court's order imposing imprisonment and a presentence investigation report, we cannot conclude that the court abused its discretion. The court's order stated that it imposed the 365-day term of imprisonment based on

> the nature and circumstances of the crime and the history, character and condition of [Phillips, and] the protection of the public, because the risk is substantial that [Phillips] would engage in additional criminal conduct and because a lesser sentence would depreciate the

---

[34] See *State v. Heckman*, 239 Neb. 25, 473 N.W.2d 416 (1991).

[35] See *Wal, supra* note 3.

[36] See *State v. Swindle*, 300 Neb. 734, 915 N.W.2d 795 (2018).

seriousness of [Phillips'] crime and promote disrespect
for the law.

Phillips argues that the 365-day term of imprisonment does
not give sufficient weight to his willingness to enter a plea of
no contest to the original charge. However, by entering into the
plea deal, Phillips received the significant benefit of having his
charge reduced from a Class ID felony, with a maximum sentence of 50 years' imprisonment, to a Class IIIA felony.

Phillips suggests that based on the presentence investigation report, he expressed remorse, accepted responsibility
for the offense, and "appear[ed] to be in the contemplative
stage of change." However, Phillips is referring to the report
that was generated for his sentence on the terroristic threats
conviction and not the most recent presentence report. The
presentence report prepared for Phillips' revocation indicates
that Phillips refused to meet with the probation officer and did
not make a statement for the report. The report that Phillips
refers to indicates that he was "assessed as a very high risk to
re-offend." When Phillips was arrested after absconding from
supervision, he was charged with possession of a controlled
substance and was found to be in possession of a switchblade
and a BB gun. The court articulated that the 365-day term
of imprisonment reflected a concern for public safety. It was
within the court's discretion to impose a term of imprisonment
that was approximately 85 percent of the maximum. Phillips'
assignment of error that the court abused its discretion is without merit.

## CONCLUSION

The 365-day term of imprisonment imposed by the court
was within the statutory range and was not an abuse of discretion. The court did not err when it denied Phillips' request for
credit for time served.

Affirmed.

Freudenberg, J., not participating.

(*See page 701 for the appendix.*)

**APPENDIX**

Calculation of Remaining Term of Post-Release Supervision (PRS)

1.  From commencement date of PRS, determine original ending date (here, a term of 18 months of PRS):

| | | |
|---|---|---|
| Term began | September 4, 2017 | First day excluded per § 25-2221 |
| Next day | September 5, 2017 | Beginning date for calculation of months |
| 18 months forward | March 5, 2019 | First step of calendar month method |
| Back 1 day | March 4, 2019 | Second step of calendar month method |
| Ending date | March 4, 2019 | Result of § 25-2221 and calendar month method |

2.  Calculate original number of days of term of PRS:

| | |
|---|---|
| Term began | September 4, 2017 |
| Term ends | March 4, 2019 |
| Number of days per § 25-2221 | **546** days |

3.  Calculate number of days of PRS served:

   (a)  Days from beginning date to date of absconsion:

| | | |
|---|---|---|
| Term began | September 4, 2017 | |
| Absconsion began | September 28, 2017 | |
| PRS days served | (per § 25-2221) | 24 |

   (b)  Days from resumption date to date of revocation:

| | | |
|---|---|---|
| Arrest and detention | February 5, 2018 | |
| Revocation | May 14, 2018 | |
| PRS days served | (per § 25-2221) | 98 |

   (c)  Total number of days served:

| | |
|---|---|
| From beginning to absconsion | 24 |
| From resumption to revocation | 98 |
| Total days of PRS served | **122** |

4.  From original number of days, subtract days served:

| | |
|---|---|
| Original number of days | 546 |
| Total days of PRS served | 122 |
| **Number of days remaining** | **424** |